UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | COMPLAINT |
| HAVRE DE GRACE ASSOCIATES ) | |
| LLP ) | |
| ) | |
| And ) | |
| ) | |
| JACQUALYNN PAGE ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## AMENDED COMPLAINT

The United States of America, by and through its attorney, Sarah A. Marquardt, Assistant United States Attorney for the District of Maryland, brings this suit against the Havre de Grace Associates LLP and Jacqualynn Page, in her capacity as the Site Manager for the subject property, for violating the Fair Housing Act based on disability.

## NATURE OF ACTION

1. This is a civil action to enforce the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

3. Venue is proper in this judicial district pursuant to 42 U.S.C. § 139l(b) because the events giving rise to this action occurred in this judicial district.

## PARTIES

4.  The Plaintiff is the United States of America, which brings this action on behalf of Sherri Blevins and Evette Thomas, in their capacity as Personal Representatives of the Estate of Cecil Turner. Mr. Turner was an "aggrieved person" as defined by the Fair Housing Act, 42 U.S.C. § 3602(i).

5.  Defendant Havre de Grace Associates LLP was the owner of The Graw ("the subject property") from 2011, when Mr. Turner moved into the subject property, through August 2017.

6.  Jacqualynn Page was the Site Manager of the subject property at all times relevant to this complaint.

## FACTUAL ALLEGATIONS

7.  The subject property is a sixty-six (66) unit affordable housing community for seniors and individuals with disabilities located in Havre de Grace, Maryland.

8.  Cecil Turner resided at the subject property from 2011 until his death in April 2018.

9.  Mr. Turner had several chronic medical impairments. Mr. Turner was legally blind and a double amputee. He used a wheelchair for mobility purposes. Mr. Turner also had diabetes. These disabilities limited his major life activities, including seeing, walking, lifting, caring for himself and surviving without regular medical treatment, including dialysis.

10. Mr. Turner was a person with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h).[1]

---

[1] The Fair Housing Act uses the terms "handicap," which is considered an antiquated term. This Complaint uses the term "disability" instead. This term has the same meaning as "handicap" as defined in the Fair Housing Act.

11. In May 2015, bed bugs were discovered in Mr. Turner's unit. Mr. Turner immediately reported the bedbugs to Jacqualynn Page, the subject property's Site Manager.

12. Ms. Page gave Mr. Turner a "Bed Bug Prep List," which consisted of several steps to be completed prior to a series of professional extermination treatments. Some of the instructions on this list included: strip bedding, remove all personal items from dressers, pull furniture away from the walls, vacuum the unit and pick up all personal items from the floor and counters.

13. Ms. Page required Mr. Turner to do everything on the list prior to the first extermination treatment, despite his known disabilities.

14. It is obvious to a reasonable person that, given his disabilities, Mr. Turner could not comply with the "Bed Bug Prep List" without some kind of assistance.

15. In July 2015, Mr. Turner solicited help from the Annie Gilliam Agency to prepare his unit for bed bug treatments.

16. In July 2015, two aides from the Annie Gilliam Agency came to the subject property to provide services for Mr. Turner, including helping to clean Mr. Turner's unit and prepare the unit for bed bug treatments.

17. The aides met Mr. Turner in front of the building and began to go with him to the elevator.

18. Ms. Page stopped the aides in the lobby and refused to let them go to Mr. Turner's unit.

19. The aides informed Ms. Page that they were prepared to help Mr. Turner with cleaning and had special equipment and training they could use when cleaning a unit with bed bugs. They asked to be permitted to go up to Mr. Turner's unit to assess the extent of the infestation and stated that they could wash his clothes and bed linens, clean and help prepare the unit for bed

bug treatments.

20. During this discussion, Mr. Turner also told Ms. Page that he needed the help from the aides because he was in a wheelchair and was unable to do everything on his own.

21. Ms. Page refused to allow the aides to help Mr. Turner with cleaning and preparing his unit for the bed bugs treatment or with other tasks Mr. Turner needed help with because of his disabilities.

22. Because Mr. Turner was denied a reasonable accommodation by Defendants, the bed bugs infestation in his unit was prolonged.

23. After denying Mr. Turner the opportunity to get assistance from the Annie Gilliam Agency with preparing his unit for bed bug treatments in July 2015, Defendants took multiple actions between March 2016 and May 2017 to try to evict Mr. Turner from his unit for his disability-related inability to comply with the requirements related to bed bugs. Specifically, on March 4, 2016, Defendants filed suit against Mr. Turner in the District Court of Maryland, Harford County, for alleged breach of his lease agreement and being a holdover tenant. Defendants continued to pursue Mr. Turner's eviction in court until May 18, 2017.

24. Defendants' actions, including refusing to allow aides to assist Mr. Turner and pursuing his eviction for one-and-a-half years, caused Mr. Turner significant physical and emotional harm.

25. On April 14, 2017, Mr. Turner filed a fair housing complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that Havre de Grace Associates, LP[2] and the subject property's site manager, Jacqualynn Page, failed to make a

---

[2] At the time of the events giving rise to this lawsuit, the owner of the subject property was a limited partnership.

reasonable accommodation to allow an in-home care agency to help him prepare his unit for bed bug treatments and discriminated against him on the basis of disability.[3]

26. Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD (the "Secretary") conducted an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report. Based on information gathered in the investigation, the Secretary found that reasonable cause existed to believe that discriminatory housing practices occurred in this case.

27. On April 4, 2018, Mr. Turner died.

28. On February 22, 2022, the Secretary issued a Charge of Discrimination ("Charge") on behalf of Sherri Blevins and Evette Thomas, in their capacity as Personal Representatives of the Estate of Cecil Turner, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Defendants with engaging in discriminatory practices in violation of the Fair Housing Act.

29. On March 9, 2022, Defendants elected to have the claims asserted in the Charge resolved in a civil action heard in federal district court pursuant to 42 U.S.C. § 3612(a).

## **CLAIMS FOR RELIEF**

30. The allegations set forth above are incorporated by reference.

31. Defendants, through the above-referenced actions, have:

   a. Discriminated in the rental of, or otherwise made unavailable or denied, a dwelling to Mr. Turner because of disability, in violation of 42 U.S.C. § 3604(f)(l)(A);

   b. Discriminated in the terms, conditions, or privileges of sale or rental of a dwelling because of a disability, in violation of 42 U.S.C. § 3604(f)(2)(A); and

   c. Refused to make reasonable accommodations in rules, policies, practices,

---

[3] Mr. Turner also filed suit against Metropolitan Associates Development Corporation, the former manager of the property. Metropolitan Associates Development Corporation has since dissolved.

or services that were necessary to afford Mr. Turner an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

32. As a result of Defendants' discriminatory actions, Mr. Turner suffered harm, including, but not limited to, physical pain and suffering, out-of-pocket expenses, and emotional distress.

WHEREFORE, the United States prays that the Court enter an order:

A. Declaring that the discriminatory conduct of Defendants as set forth above violates the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*;

B. Enjoining the Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from discriminating against any person because of disability, in violation of the Fair Housing Act;

C. Ordering Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or tenants are discriminated against because of disability;

D. Awarding monetary damages to Sherri Blevins and Evette Thomas, in their capacity as Personal Representatives of the Estate of Cecil Turner, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and,

E. Ordering such additional relief as the interests of justice may require.

The United States demands trial by jury.

Respectfully submitted,

EREK L. BARRON  
United States Attorney  
District of Maryland

/s/
_____
SARAH A. MARQUARDT (No. 17429)
Assistant U.S. Attorney
36 South Charles Street, 4th floor
Baltimore, Maryland 21201
(410) 209-4801 (direct)
Sarah.marquardt@usdoj.gov